BROWN WHITE & OSBORN LLP
THOMAS M. BROWN (SBN 117449)
KENNETH P. WHITE (SBN 173993)
KARINEH DARBINIAN (SBN 281275)
515 S. Flower St., Suite 1000
Los Angeles, California 90071
Telephone: 213.613.0500
Facsimile: 213.613.0550
tbrown@brownwhitelaw.com
kwhite@brownwhitelaw.com
kdarbinian@brownwhitelaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MANHATTAN BEACH FIREFIGHTERS' ASSOCIATION, LOCAL 3925, a labor association, and individuals THOMAS DESMOND, STEVEN FAIRBROTHER, JAMES FALLS, BRIAN FUJIMOTO, CHRIS GRAFTON, PETER HECK, PATRICK JACOBSON, CHRISTIAN MCARTHUR, RUDY MEJIA, JEFFREY RICE, JAMES STRATTON, and ERICK STRONG,

Plaintiffs,

v.

CITY OF MANHATTAN BEACH, a municipal corporation; individuals BRUCE MOE, LISA JENKINS; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:24-cv-04228-HDV-ASx

Judge: Hon. Hernán D. Vera

**PLAINTIFFS' OBJECTIONS TO DEFENDANT CITY OF MANHATTAN BEACH'S APPLICATION TO THE CLERK TO TAX COSTS [DKT. 211]**

[L.R. 54-2.2]

[*Filed concurrently with Declaration of Kenneth P. White*]

Judgment Entered: October 30, 2026 [Dkt. 210]

# TABLE OF CONTENTS


Page

I. MEET-AND-CONFER STATEMENT (L.R. 54-2.2) ... 3
II. LEGAL STANDARD ... 3
III. ITEM-BY-ITEM OBJECTIONS ... 4
- A. Tab 2: "Fees for Service of Process" ($885.55) ... 4
- B. Tab 5: Depositions: Objection to $51,179.66 of $98,129.66 Claimed. 6
  - 1. Video recording, video page surcharges, and synchronization ($31,243.00) ... 6
  - 2. Rough drafts, expedited delivery, and "last minute booking" premiums ($6,551.66) ... 7
  - 3. Fees paid to Plaintiffs' expert witnesses for deposition time ($2,200.00) ... 8
  - 4. Audio transcriptions of City Council meetings ($1,189.50) ... 9
  - 5. Late-cancellation fee ($650.00) ... 10
  - 6. Parking ($46.00) ... 10
  - 7. Unenumerated vendor add-ons ($9,299.50) ... 10
- C. Tab 10(a): Trial Binders ($2,333.95) ... 11
- D. Tab 10(b): On-Site Scanning ($763.00) ... 11
- E. Tab 10(f): Trial Graphics Consultant and Trial Technician ($52,081.25) ... 12
- F. Tab 10(g): E-Discovery Hosting and Consulting ($52,699.05) ... 14
  - 1. DISCO database hosting ($39,464.05) ... 14
  - 2. FTI Consulting invoice already taxed in Shenbaum ($13,235.00) ... 17

IV. THE COURT SHOULD DECLINE TO AWARD ANY COSTS ... 18
V. CONCLUSION ... 23
APPENDIX A ... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175 (9th Cir. 1990) .................. 5

*Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572 (9th Cir. 2000) (en banc) ........................................ 3, 19, 22, 23

*Bradach v. Pharmavite LLC*, No. 2:14-CV-03218-GHK (AGRx), 2017 U.S. Dist. LEXIS 223575 (C.D. Cal. Mar. 22, 2017) .................................. 8

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) ...................... 3, 8

*Draper v. Rosario*, 836 F.3d 1072 (9th Cir. 2016) .................................... 19, 20, 21

*Eaglesmith v. Ray*, No. 2:11-cv-00098 JAM-AC, 2013 U.S. Dist. LEXIS 42824 (E.D. Cal. Mar. 25, 2013) ............................................ 22

*English v. Colo. Dep't of Corr.*, 248 F.3d 1002 (10th Cir. 2001) ......................... 4, 6

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014) 19, 20, 21, 22

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014) .................................. 19

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914 (9th Cir. 2015) 3, 13, 15, 16, 18

*Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955 (9th Cir. 2013) ............................................ 3, 7, 12, 13, 14

*Mansourian v. Bd. of Regents of Univ. of Cal. at Davis*, 566 F. Supp. 2d 1168 (E.D. Cal. 2008) ............................................ 19, 21

*Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748 (8th Cir. 2006) ......................... 22

*Plantronics, Inc. v. Aliph, Inc.*, No. C 09-01714 WHA (LB), 2012 WL 6761576 (N.D. Cal. Oct. 23, 2012) ............................................ 18

*Quan v. Comput. Scis. Corp.*, 623 F.3d 870 (9th Cir. 2010) ............................ 19, 21

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012) ............................................ 15

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ............... 2

*Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334 (2019) ................................. 3

*Romero v. City of Pomona*, 883 F.2d 1418 (9th Cir. 1989) .................................. 13

*Shenbaum v. City of Manhattan Beach*, No. 2:22-cv-08062-KS (C.D. Cal.) .. passim

*Stanley v. Univ. of S. Cal.*, 178 F.3d 1069 (9th Cir. 1999) ............................. 19, 21

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ....................................... 3

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1991) (en banc) ............................................ 13

BROWN WHITE & OSBORN LLP ATTORNEYS

**Statutes**


28 U.S.C. § 1821 .......... 8, 9
28 U.S.C. § 1920 .......... passim
28 U.S.C. § 1924 .......... 17
42 U.S.C. § 1983 .......... 19, 20


**Rules**


Fed. R. Civ. P. 4 .......... 4
Fed. R. Civ. P. 26(b)(4)(E) .......... 8
Fed. R. Civ. P. 30(b)(3)(A) .......... 7
Fed. R. Civ. P. 45 .......... 4
Fed. R. Civ. P. 54(d) .......... passim
Fed. R. Evid. 201 .......... 2
C.D. Cal. L.R. 5-4.5 .......... 5
C.D. Cal. L.R. 54-2.1 .......... 3, 13
C.D. Cal. L.R. 54-2.2 .......... 1, 3
C.D. Cal. L.R. 54-2.4 .......... 4, 7, 9
C.D. Cal. L.R. 54-2.5 .......... 3, 19, 23
C.D. Cal. L.R. 54-3.2 .......... 4
C.D. Cal. L.R. 54-3.4 .......... 9
C.D. Cal. L.R. 54-3.5 .......... 6, 7, 8, 9, 10
C.D. Cal. L.R. 54-3.6 .......... 8, 9, 10
C.D. Cal. L.R. 54-3.10 .......... passim
C.D. Cal. L.R. 54-3.12 .......... 12, 13, 15


**Other Authorities**


C.D. Cal., *Bill of Costs Handbook* (rev. Nov. 2, 2021) .......... passim


BROWN WHITE & OSBORN LLP ATTORNEYS

TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Plaintiffs Manhattan Beach Firefighters' Association, Local 3925, Thomas Desmond, Steven Fairbrother, James Falls, Brian Fujimoto, Chris Grafton, Peter Heck, Patrick Jacobson, Christian McArthur, Rudy Mejia, Jeffrey Rice, James Stratton, and Erick Strong (collectively, "Plaintiffs") object, pursuant to Local Rules 54-2.2 and 54-3, to the Application to the Clerk to Tax Costs filed by Defendant City of Manhattan Beach (the "City") on November 13, 2026 (Dkt. 211, the "Application"). Through its Application, the City asks the Clerk to tax $206,892.46 in costs against 12 rank-and-file firefighters and their union for pursuing their First Amendment claims. More than three-quarters of that sum, $159,942.46, is either not taxable under 28 U.S.C. § 1920 and this Court's Local Rules, or not documented as those rules require.

Plaintiffs object on the following grounds:

1. An award of this magnitude in a civil rights case of public importance would chill future claims by public employees who speak out about public safety; and
2. The Application seeks costs that the Local Rules and 28 U.S.C. § 1920 do not permit, and it does not document the rest with the specificity those rules require. For example:
   a. $52,081.25 for a trial-graphics consultant and trial technician who built the City's opening and closing PowerPoint decks and cut video clips from counsel's cross-examination outlines (Tab 10(f); Dkt. 211 at 10, 102–06);
   b. $39,464.05 for two years of monthly e-discovery database hosting fees (Tab 10(g.1); Dkt. 211 at 11, 108–32);
   c. a $13,235.00 consulting invoice that the City already submitted, and on which it was already awarded costs, in the companion *Shenbaum* case (Tab 10(g.2); Dkt. 211 at 11, 134–39); and
   d. $51,179.66 of the $98,129.66 claimed for depositions, including

BROWN WHITE & OSBORN LLP
ATTORNEYS

videography charges for which no pre-deposition court order exists, expedite and rough-draft premiums, fees paid to Plaintiffs' expert witnesses for their deposition time, transcriptions of City Council meeting recordings, a cancellation fee, parking, and assorted vendor add-ons (Tab 5; Dkt. 211 at 33–73).

These charges, and the others addressed below, are the kinds of litigation overhead that the Supreme Court, the Ninth Circuit, and this Court's Local Rules exclude from taxation.

The City has been here before. In a companion case, *Shenbaum v. City of Manhattan Beach*, No. 2:22-cv-08062-KS (C.D. Cal.) (the "Shenbaum Action"), the City sought the exact same categories of costs, supported by the same vendors' invoices. The Clerk in the Shenbaum Action disallowed the City's video, "Zoom," and expedited deposition charges as "not allowable per the L.R." Declaration of Kenneth P. White ("White Decl.") ¶ 5, Ex. 2, Shenbaum Action, Dkt. 214 at 2. On re-taxation, the Court disallowed the City's consultant charges that reflected "intellectual effort," or that blended such effort with technical tasks, reducing the City's trial-consultant claim by 89%. White Decl. ¶ 7, Ex. 4, Shenbaum Action, Dkt. 221 at 18, 22, 24. The City's Application here repeats those claims on a far larger scale. Its trial-consultant claim alone has grown from $2,666.25 in the Shenbaum Action to $52,081.25 here. (White Decl. ¶ 7, Ex. 4, Shenbaum Action, Dkt. 221 at 24; Dkt. 211 at 10.) Where the Shenbaum court allowed a category of costs that the City claims again here, Plaintiffs address that ruling below and explain why it does not control.[1]

As set out below and in the itemized chart attached as Appendix A, Plaintiffs object to $159,942.46 of the $206,892.46 claimed. Plaintiffs also show that the Court should exercise its discretion to deny costs altogether in this First Amendment retaliation

[1] The *Shenbaum* filings cited in these objections are attached as Exhibits 1 through 4 to the White Declaration, and Plaintiffs request that the Court take judicial notice of them. Fed. R. Evid. 201(b); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).




BROWN WHITE & OSBORN LLP ATTORNEYS

action, *see Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591–93 (9th Cir. 2000) (en banc), or at a minimum, to divide any award among Plaintiffs rather than impose it jointly and severally. Plaintiffs expressly preserve those requests for the Court's review under Local Rule 54-2.5 and Rule 54(d)(1).

## I. MEET-AND-CONFER STATEMENT (L.R. 54-2.2)

Counsel for Plaintiffs met and conferred with counsel for the City regarding the objections set forth herein on November 23, 2026, by telephone, in an effort to resolve their disagreement. Before the call, Plaintiffs' counsel outlined each objection by email, and counsel discussed each one during the call. The parties were unable to resolve any of them. (White Decl. ¶ 2.)

## II. LEGAL STANDARD

Rule 54(d)(1) provides that costs "other than attorney's fees" should generally be allowed to the prevailing party, but the categories of recoverable costs are defined, and limited, by 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987) (§ 1920 defines the "costs" taxable under Rule 54(d)); *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 339–40 (2019) (§ 1920 specifies the six categories of litigation expenses that federal courts may award as costs). Taxable costs are "limited to relatively minor, incidental expenses," and the scope of § 1920 is "narrow." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). The Ninth Circuit accordingly construes § 1920 narrowly and declines to tax expenses that merely add to the convenience of counsel. *Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958–59 (9th Cir. 2013) (per curiam) (video editing and synchronization not taxable); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 926–32 (9th Cir. 2015) (only the costs of making copies are taxable under § 1920(4)).

This Court's Local Rules implement those limits. The applicant must "state separately and specifically each item of taxable costs claimed" and attach supporting documentation, and an item's omission or inadequate documentation "will be grounds for not taxing" it. L.R. 54-2.1. Only the items identified in Local Rules 54-3.1 through

BROWN WHITE & OSBORN LLP ATTORNEYS

54-3.13 may be taxed, and the Clerk has no discretion to tax anything else. L.R. 54-2.4. The party seeking costs bears the burden of establishing that each item is taxable and was necessarily incurred. *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1013 (10th Cir. 2001). The Court's Bill of Costs Handbook is to the same effect: where an invoice "contains both taxable and non-taxable costs," the applicant must "highlight or otherwise identify the taxable items being claimed" and "show [its] work"; the Clerk will not "make any calculations" or "sort out the correct taxable amounts" for it. C.D. Cal., Bill of Costs Handbook § VI (rev. Nov. 2, 2021) ("Handbook"). And "[f]ailure to attach documentation that clearly shows both (1) the exact amount of a claimed item and (2) why that item is taxable is grounds for denial of taxation of that cost." *Id.*

## III. ITEM-BY-ITEM OBJECTIONS

The City bears the burden of establishing that each item it claims is authorized by § 1920 and the Local Rules, was necessarily incurred, and is adequately documented. As shown below, the City has not carried that burden as to at least $159,942.46 of the $206,892.46 it claims.

### A. Tab 2: "Fees for Service of Process" ($885.55)

Plaintiffs object to the $885.55 the City seeks under Tab 2 because none of it is a fee for service of process or service of a subpoena, and the supporting invoices do not identify what was delivered or why. Local Rule 54-3.2 permits taxation of reasonable fees for service of process under Rule 4 and of subpoenas under Rule 45. The City's Tab 2 contains no service of process or subpoena fees. Its own itemization describes every entry as "Fees for courtesy delivery to USDC" (Dkt. 211 at 5), and the attached First Legal invoices are messenger runs, including "special vehicle" and same-day rush deliveries, to chambers drop boxes (*id.* at 14–29). These are delivery charges, not fees for service of process or subpoenas, and L.R. 54-3.2 does not reach them.

Nor may the Clerk re-characterize Tab 2 as a claim under Local Rule 54-3.10(a), which covers "the cost of copying and delivering Mandatory Chambers Copies required by the Court." **The City did not claim these charges under that rule**. Even if it had,



BROWN WHITE & OSBORN LLP ATTORNEYS

the City did not identify which filings were delivered, and made no showing that each delivery was a chambers copy the Court required. At least one plainly was not: a $64.77 "special vehicle" run delivered an envelope to the City's own trial counsel at the courthouse, with a 25-minute wait charge (*id.* at 29). At a minimum, that $64.77 charge must be disallowed, and the premium "PDF/Ship," "special vehicle," fuel, and wait-time surcharges are not the cost of "copying and delivering" a chambers copy.

Four further defects prevent these charges from being treated as taxable chambers copies. *First*, L.R. 5-4.5, which requires chambers copies, applies "[u]nless otherwise ordered by the assigned judge," and Judge Vera has ordered otherwise: chambers copies are required only of "e-filed motion-related documents (i.e., moving papers, oppositions and replies), as well as all associated exhibits." (Dkt. 32 at 3; Dkt. 211 at 82.) The Court's Civil Standing Order is the same, and adds that "[t]he Court no longer requires chambers copies for any other e-filed documents." (Dkt. 11 at 17.) It also directs: "Please do not deliver courtesy copies of discovery documents to Judge Vera's chambers." (*Id.* at 5.) Thus, the City has not shown that any delivery was a required motion-related chambers copy. To the extent some deliveries went to the assigned Magistrate Judge, the City must show what each delivery contained and that the Magistrate Judge required it, and it has done neither. The *Shenbaum* court allowed courtesy-copy delivery charges under the default rule of L.R. 5-4.5 (White Decl. ¶ 7, Ex. 4, Shenbaum Action, Dkt. 221 at 14), but here the assigned judge has ordered otherwise, and the City has not identified a single delivery that an order required. *Second*, L.R. 54-3.10(a) covers "the cost of copying and delivering" a required copy, not "special vehicle" and same-day rush surcharges, fuel, wait time, or a delivery to the City's own lawyer. *Third*, the invoices do not identify a single document delivered, the purpose of any delivery, or the order that required it. That burden is the City's, not the Clerk's. *English*, 248 F.3d at 1013. Nor does *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 178 (9th Cir. 1990), help the City: *Alflex* concerned private process servers' fees for service of process, and Tab 2 contains none. *Fourth*, none of the

BROWN WHITE & OSBORN LLP ATTORNEYS

categories of costs Congress made taxable covers delivery or messenger charges. 28 U.S.C. § 1920. Because the invoices are insufficiently detailed and the charges are not taxable, the Clerk should disallow Tab 2 in its entirety.

**B. Tab 5: Depositions: Objection to $51,179.66 of $98,129.66 Claimed**

Plaintiffs object to $51,179.66 of the $98,129.66 the City claims for depositions because the supporting invoices include charges the Local Rules expressly exclude: video recording the Court never ordered, rough-draft and expedited transcripts, fees paid to Plaintiffs' experts above the statutory rate, transcriptions of public meetings, and unexplained vendor add-ons. (Dkt. 211 at 33–73; *see* Appendix A.) Local Rule 54-3.5 provides that deposition costs "are taxable only to the extent set forth" in its subparts. It specifically excludes expedited and real-time charges absent a prior order or written stipulation, and excludes video and audio recording and technician costs unless the Court ordered recording before the deposition. L.R. 54-3.5(a)–(b).

**1. Video recording, video page surcharges, and synchronization ($31,243.00)**

The largest category of improper deposition charges is for video recording, which the Court never ordered. Every Steno invoice includes a "Video Hourly Fee," a "Text to Video Sync Hourly Fee," and an "Additional Page Rate for Video" surcharge, and the City separately claims stand-alone video invoices from Veritext ($510.00 for "Video – MPEG/Digitizing" and "Video – Electronic Access") and Legal Video Solutions ($667.50 for a videographer and "Synched Video with Transcript"). (Dkt. 211 at 33, 35–36, 38–39, 41–42, 45, 47–49, 55–56, 59–60, 64, 66–67, 70, 73.) The cost of video recording and the fees of video technicians are not taxable unless the Court ordered video recording before the deposition. L.R. 54-3.5(a), (b). The City attached no such order, and none exists. (White Decl. ¶ 8.) Where a Local Rule conditions taxation on a court order, the applicant "must attach a copy of that order," and the Clerk "will not comb the docket to find a court order that might make a cost taxable." Handbook § VI. Synchronization is independently non-taxable because it is "not an act of copying or



BROWN WHITE & OSBORN LLP ATTORNEYS

exemplification" and merely serves counsel's convenience. *Kalitta Air*, 741 F.3d at 959.

The City may argue that video costs are taxable because it noticed the depositions for video recording and Plaintiffs did not object. The Clerk rejected that argument when the City made it in the Shenbaum Action (White Decl. ¶ 5, Ex. 2, Shenbaum Action, Dkt. 214 at 2), and it fails here too. Local Rule 54-3.5 requires a court order entered *before* the deposition; a party's failure to object to a deposition notice is not a court order, and the Clerk has no discretion to tax what the Local Rule excludes. L.R. 54-2.4. And under the Federal Rules, "[t]he noticing party bears the recording costs." Fed. R. Civ. P. 30(b)(3)(A). The $31,243.00 in video-related charges should be disallowed.

**2. Rough drafts, expedited delivery, and "last minute booking" premiums ($6,551.66)**

Plaintiffs object to $6,551.66 in charges the City incurred to obtain transcripts faster or in extra forms. These are costs of convenience, not the cost of the transcript the Local Rule allows. Local Rule 54-3.5(a) allows the original and one additional copy. Where the City already paid for the "Original + 1 Certified Copy" (Steno) or a certified copy (Veritext), the rough-draft transcripts it also ordered are a second, non-taxable copy purchased for counsel's convenience ($3,773.50) (Dkt. 211 at 36–37, 46, 54, 56–57, 59, 64, 66). Expedited-delivery charges are not taxable absent a court order or a written stipulation entered before the costs were incurred, L.R. 54-3.5(a), and the City identifies neither, because none exists (White Decl. ¶ 8); the "Expedite Rate – 2 Days at 90%" charges on the O'Brien, Castro, and Mejia (PMK) invoices ($2,578.16) (*id.* at 56, 64, 67) and the $200.00 "Last Minute Booking Fee" on the Falls invoice (*id.* at 41) are premiums for speed that must be disallowed. The Clerk disallowed the City's expedited-handling charges in the Shenbaum Action on the same ground. (White Decl. ¶ 5, Ex. 2, Shenbaum Action, Dkt. 214 at 2.) The Clerk should disallow all $6,551.66.

**3. Fees paid to Plaintiffs' expert witnesses for deposition time ($2,200.00)**

Plaintiffs object to the $2,200.00 the City paid Plaintiffs' experts for their





BROWN WHITE & OSBORN LLP ATTORNEYS

deposition time, because expert compensation is taxable only at the statutory witness rate. The City claims $1,500.00 paid to Plaintiffs' expert Joseph Castro for five hours of deposition time at $300 per hour, and $700.00 paid to Freeman & Mills for 1.75 hours of expert Matthew Ferrante's deposition time. (Dkt. 211 at 65, 68.) These are expert fees paid under Rule 26(b)(4)(E), not deposition costs. The only category in § 1920 that reaches a payment to a witness is "[f]ees . . . for . . . witnesses," 28 U.S.C. § 1920(3), and those fees are fixed by 28 U.S.C. § 1821, which applies to a witness in attendance "before any person authorized to take his deposition" and sets the attendance fee at $40 per day. 28 U.S.C. § 1821(a)(1), (b). The City did not claim witness fees under L.R. 54-3.6 at all (Dkt. 211 at 2, 4), so these charges should be disallowed in full. The Handbook confirms that witness fees "are only taxable at the statutory rate, no matter who the witness is or what his or her normal hourly rate may be." Handbook § VI.

Nor does Rule 26(b)(4)(E) supply the authority the City lacks. The deposing party must pay the opposing expert's reasonable fee as a condition of obtaining the deposition. This is a discovery cost borne by the party who chooses to depose the opposing expert. Because § 1920 does not enumerate fees paid to an opposing party's retained expert as a taxable cost, and because *Crawford Fitting* bars courts from expanding the categories of taxable costs beyond those Congress specified (482 U.S. at 442), the prevailing party has no statutory basis to recover these payments as taxable costs after winning the case. And no Local Rule authorizes the Clerk to tax expert fees: L.R. 54-3.5 contains no such provision, and L.R. 54-3.6 taxes witness fees "at statutory rate only."

The City will point out that the *Shenbaum* court allowed it to recover the fees it paid to depose the plaintiffs' experts in that case. (White Decl. ¶ 7, Ex. 4, Shenbaum Action, Dkt. 221 at 14–16.) But that ruling relied principally on *Bradach*, which rests on the premise that the experts did not testify at trial and therefore were not trial witnesses subject to § 1821(b). *See Bradach v. Pharmavite LLC*, No. 2:14-CV-03218-GHK (AGRx), 2017 U.S. Dist. LEXIS 223575, at *8 (C.D. Cal. Mar. 22, 2017). The *Shenbaum* Action ended on summary judgment, so no expert testified there. Here, Mr.

BROWN WHITE & OSBORN LLP ATTORNEYS

Castro and Mr. Ferrante testified at trial, and the City's own trial technician billed for preparing clips from the City's "Ferrante Cross Exam outline" and "Castro outline." (Dkt. 211 at 105; White Decl. ¶ 9.) As trial witnesses, their compensation is governed by 28 U.S.C. § 1821(b). At most, $40.00 per witness could be taxed, and only if claimed under L.R. 54-3.6, which the City did not do. The $2,200.00 should be disallowed.

**4. <u>Audio transcriptions of City Council meetings ($1,189.50)</u>**

Plaintiffs object to the $1,189.50 the City paid to transcribe recordings of public City Council meetings, which are neither depositions nor court proceedings. Two Esquire invoices are for "Audio Transcription" of recordings of Manhattan Beach City Council meetings held September 20, 2022, and July 25, 2025. (Dkt. 211 at 34, 40.) These are not costs "incurred in connection with oral depositions" under L.R. 54-3.5, and they are not transcripts of court proceedings under L.R. 54-3.4. No Local Rule authorizes taxation of a party's transcription of its own public-meeting recordings, so the Clerk has no discretion to tax them. L.R. 54-2.4. To the extent the City invokes 28 U.S.C. § 1920(2), that statute's reference to transcripts "necessarily obtained for use in the case" is implemented in this District by L.R. 54-3.4, which covers only transcripts of court proceedings and requires an order or stipulation. The City offers neither. The $1,189.50 should be disallowed. *See* Handbook § VI ("To claim the cost of transcripts of court proceedings, you must provide a Court order or stipulation.").

**5. <u>Late-cancellation fee ($650.00)</u>**

Plaintiffs object to the $650.00 late-cancellation fee, which the Local Rules do not allow. The City claims a $400.00 court-reporter and $250.00 videographer "Late Cancellation Fee" for a second volume of Rudy Mejia's deposition that did not go forward. (Dkt. 211 at 44.) Local Rule 54-3.5(b) permits reporter fees only for a properly noticed deposition at which "the deponent fails to appear." The City makes no showing that Mr. Mejia failed to appear at a properly noticed deposition (White Decl. ¶ 10). The videographer component is non-taxable in any event. L.R. 54-3.5(b). The $650.00 should be disallowed.



BROWN WHITE & OSBORN LLP ATTORNEYS

**6. Parking ($46.00)**

The City claims $46.00 reimbursed to witness Michael Boyd for parking. (Dkt. 211 at 71.) Parking for a deponent is not a deposition cost under L.R. 54-3.5. The City did not claim this cost as witness fees or expenses under L.R. 54-3.6, nor could it. The $46.00 should be disallowed.

**7. Unenumerated vendor add-ons ($9,299.50)**

Plaintiffs object to $9,299.50 in vendor add-on charges that no Local Rule authorizes. These charges fall outside the ancillary items enumerated in L.R. 54-3.5(a), and the City makes no attempt to explain them: “Litigation Package – Standard/Remote” fees of $149 to $299 per deposition ($4,032.00); “Media and Cloud Services (7 Years)” storage fees ($450.00); Veritext “Smart Summary” deposition digests ($1,375.00), which are attorney work-product aids; lump-sum Veritext “Logistics, Processing & Electronic Files” fees ($3,055.00); a “Touchscreen Device Rental” ($250.00); and an “Additional Page Rate for Expert/Medical” surcharge ($137.50) above the standard page rate, for which the City offers no explanation of reasonableness. An invoice that bundles non-taxable services with taxable ones without breaking them out is “sufficient grounds for not taxing the cost.” L.R. 54-3.5(a). The Handbook likewise requires an applicant to “highlight or otherwise identify the taxable items” on an invoice that mixes taxable and non-taxable charges. Handbook § VI. The City did not do so; it claimed the full amount of every deposition invoice. (*See* Appendix A.) The “Remote” litigation packages are remote-platform (Zoom) charges of the kind the Clerk disallowed in the Shenbaum Action. (White Decl. ¶ 5, Ex. 2, Shenbaum Action, Dkt. 214 at 2.) These charges should also be disallowed.

In sum, the Clerk should disallow $51,179.66 of the City’s deposition costs, as itemized in Appendix A, because they are not permissible. The remainder of these costs should be disallowed on the equitable grounds articulated below.

**C. Tab 10(a): Trial Binders ($2,333.95)**

Plaintiffs object to the $2,333.95 the City seeks for trial binders because the City

BROWN WHITE & OSBORN LLP ATTORNEYS

has not shown which copies, if any, the Court required. Local Rule 54-3.10(a) permits the cost of copies of documents "necessarily filed and served" and of copying and delivering mandatory chambers copies. The Discovery Data Solutions invoice reflects 2,016 scanned pages, 7,902 printed pages, 164 color pages, fourteen binders, and 396 tabs (Dkt. 211 at 98), but the City does not say how many sets were made, for whom, or which exhibits they contained. The Civil Trial Order required three sets of exhibit binders for the Court (Dkt. 32 at 12; Dkt. 211 at 91); copies for counsel, witnesses, or the City's own trial team are "incurred for the convenience of counsel" and "are not recoverable." L.R. 54-3.10. Nor do the trial exhibits qualify under L.R. 54-3.10(b), which reaches copies admitted into evidence only where the original was unavailable or a copy was substituted at an opposing party's request. Because the City did not provide the "consolidated itemization" describing "with specificity" the tasks performed, as L.R. 54-3.10 requires, the item should be disallowed. *See* Handbook § VI (an applicant seeking copy costs must "explain how those copies were necessary to the case"). Alternatively, the Clerk should tax no more than the portion the City demonstrates is attributable to the three Court-required sets.

### D. Tab 10(b): On-Site Scanning ($763.00)

Plaintiffs object to the $763.00 the City seeks for on-site scanning because the City has not tied it to any copy admitted into evidence or to any required production format. The charge is for First Digital Solutions' on-site scanning at the Manhattan Beach Fire Department for a document production, under L.R. 54-3.10(b). (Dkt. 211 at 9, 100.) Subsection (b) applies only to copies of materials "admitted into evidence" where the original was unavailable or a copy was substituted at an opposing party's request; the City makes no such showing. If considered under L.R. 54-3.10(g), the claim still fails, because a party claiming reproduction costs for discovery in a required format must attach the agreement or order imposing those format requirements, and the City attached none. *See* Handbook § VI. In addition, the $195.00 on-site setup fee, $125.00 travel charge, and $15.00 miscellaneous charge are not reproduction costs under any



BROWN WHITE & OSBORN LLP ATTORNEYS

subsection. At most, $428.00 in scanned-image charges could be considered, and only upon the showing L.R. 54-3.10(g) requires. The City has not made that showing, and the Clerk should disallow Tab 10(b) in full.

### E. Tab 10(f): Trial Graphics Consultant and Trial Technician ($52,081.25)

Plaintiffs object to the $52,081.25 the City seeks for its trial-graphics consultant and trial technician because those charges pay for the intellectual work of building the City's trial presentation, not for the certification or exemplification of any document or record. The City seeks $35,056.25 for 88.75 hours of "Graphics Creation & Video Editing" at $395 per hour, and $17,025.00 for 56.75 hours of "Trial Technician" services at $300 per hour, citing a nonexistent "L.R. 564-3.10(4)." (Dkt. 211 at 10, 102–06.) There is a Local Rule 54-3.10, but it addresses reasonable reproduction of documents, not trial graphics or technicians. Only pages 3 through 7 of the seven-page invoice are attached. The billing entries describe designing the City's opening and closing presentations, building an OnCue database, cutting deposition clips from counsel's witness outlines, and installing and removing courtroom equipment. (Id. at 102–06.)

None of this is "certification or exemplification" of a "document or record" under L.R. 54-3.10(f) or § 1920(4). In its narrow sense, "exemplification" means an official transcript of a public record, authenticated as a true copy for use as evidence; in its broader sense, it means illustration by example. See *Kalitta Air*, 741 F.3d at 958 & n.4. The Ninth Circuit did not need to choose between those meanings. It held that editing deposition video into trial clips does not fall within any definition of exemplification, and that editing and synchronizing video with transcripts are not taxable because they are services "in excess of the costs of making copies" and "incidental to trial preparation." *Kalitta Air*, 741 F.3d at 958–59. Demonstrative graphics are governed instead by L.R. 54-3.12, which permits taxation of the reasonable cost of preparing visual aids, photographs, and models only upon court order, and provides that "[t]he intellectual effort involved in the production of these materials may not be taxed." The




BROWN WHITE & OSBORN LLP ATTORNEYS

City obtained no such order and claimed $0.00 under L.R. 54-3.12 (Dkt. 211 at 3). As the Handbook explains as to L.R. 54-3.12, "[o]nly the cost of the physical preparation and duplication of the three categories of items listed in the rule is taxable, and only if a court order allowing the cost is attached to the Application." Handbook § VI. The hourly design, consultation, and editing work billed here is precisely the "intellectual effort" the rule excludes. *See Online DVD-Rental*, 779 F.3d at 927 (§ 1920(4) permits fees "only for the physical preparation and duplication of documents, not the intellectual effort involved in their production"); *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989) (fees for research and analysis underlying exhibits not taxable as exemplification), *abrogated on other grounds by Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1991) (en banc). Equipment installation and in-court technical support are not a copying or exemplification cost at all. Nor can the Clerk tax an invoice the City did not fully produce. L.R. 54-2.1.

The City may invoke *Online DVD-Rental*'s statement that the job title of the person doing the work does not control. However, *Online DVD-Rental* affirmed the taxation of visual-aid costs only because the record showed that "the vendors were only paid to perform the tasks associated with production and not for creating the substantive content of the visual aids." 779 F.3d at 932. The invoice here shows the opposite: "[d]rafting of PowerPoint template," "[c]reation of graphics for Opening statements," "[i]nitial creation of Closing graphics," "[c]reation of graphics series for Jacobson cross-examination," developing "information . . . into demonstratives for the jury" in a meeting with a City fire chief, and creating a "Vacancy and Overtime . . . bar chart graphic, including the percentage change year-to-year." (Dkt. 211 at 102–04.) That is the creation of substantive content. *Kalitta Air* draws the same line: the Ninth Circuit affirmed an award of graphics-consultant costs there only after the district court had removed the consultants' charges for intellectual effort. 741 F.3d at 959.

The court in the *Shenbaum* Action applied this distinction and disallowed every entry reflecting review, calls, case updates, or trial preparation, as well as every entry




BROWN WHITE & OSBORN LLP ATTORNEYS

that combined such work with technical tasks, because L.R. 54-3.10 requires the applicant to set out "with specificity, particularity, and clarity the distinct tasks and services performed." (White Decl. ¶ 7, Ex. 4, *Shenbaum* Action, Dkt. 221 at 18.) Under that standard, nearly every entry here must be disallowed, because it either describes intellectual work or bundles it with technical tasks without allocating time. Separating the two was the City's burden, not the Clerk's: the Handbook directs applicants not to "assume that the Court will be able to make any calculations for you or sort out the correct taxable amounts if you do not provide an itemized breakdown." Handbook § VI. The few remaining entries (loading a database onto a trial computer, installing and removing courtroom equipment and a speaker system, and uploading files to Dropbox) are not "certification or exemplification" or "making copies" at all.

Nor can the City distinguish *Kalitta Air* by recasting its technician's work as the processing of existing case materials. The technician billed for "[e]xtract[ing] clip list[s]" from counsel's witness outlines, "[c]reat[ing] clips," exporting "edited transcript and video," and "[r]e-sync[ing]" depositions (Dkt. 211 at 105–06). That is precisely the editing and synchronization that *Kalitta Air* held non-taxable. 741 F.3d at 958–59. And the City cannot overcome L.R. 54-3.12's requirement of a court order for visual aids and its bar on taxing "[t]he intellectual effort involved in the production of these materials." The Clerk should disallow the entire $52,081.25.

### F. Tab 10(g): E-Discovery <u>Hosting and Consulting ($52,699.05)</u>

Plaintiffs object to the $52,699.05 the City claims under Tab 10(g) because the invoices show monthly database storage fees and consultant services, not the physical replication or reproduction of anything. (Dkt. 211 at 11, 108–39.) These are general litigation-support costs, not the "costs of making copies" that § 1920(4) and L.R. 54-3.10(g) allow.

#### 1. <u>DISCO database hosting ($39,464.05)</u>

Plaintiffs object to the $39,464.05 in DISCO charges because they are rent for storing the City's data on a review platform. (Dkt. 211 at 108–32.) From September



BROWN WHITE & OSBORN LLP ATTORNEYS

2024 through January 2026, DISCO billed $42.80 per gigabyte per month for data "Active" in the "MBFA v. Manhattan Beach" review database, plus "HWM True Up" adjustments, for a total of $34,964.05. From February through October 2026, after the data was moved to "Vault" storage, DISCO billed a $500.00 "Review DB Monthly Minimum" each month, for another $4,500.00. None of the 25 invoices bills for processing, conversion to a production format, optical character recognition, Bates-numbering, or producing a single page. The City's itemization confirms the purpose: "ingesting, sorting, and production" of data, and enabling the City "to review and classify 120,521 documents." (*Id.* at 11.)

Section 1920(4) reaches only "the costs of making copies," and the Ninth Circuit requires that "the tasks and services for which an award of costs is being considered . . . be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies." *Online DVD-Rental*, 779 F.3d at 928. *Online DVD-Rental* allowed costs for discrete copying tasks (conversion to a non-editable format, OCR, and preservation of metadata in produced files), not for the hosting and review that precede production. *Id.* at 927–31 (adopting the narrow construction of *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 169–71 (3d Cir. 2012)).

Local Rule 54-3.10 says the same: "[c]osts incurred for the convenience of counsel or as prefatory steps in the discovery process before copying documents for actual production are not recoverable." L.R. 54-3.10. And a party claiming the cost of producing material in a required format must attach "the agreement or order imposing the relevant requirements." L.R. 54-3.10(g). The City attached none. The only such agreement in this case is the parties' Joint Rule 26(f) Report, which provides that "[e]lectronically stored information shall be produced in a suitable, native format." (Dkt. 30 at 13.)

The parties' agreement in the joint report does not make the DISCO charges taxable in any event. It governs the format of the copies produced: native files, produced

as they are kept. Native production is the simplest form of copying. It requires no image conversion, OCR, or load files, and it does not require a hosted review platform. L.R. 54-3.10(g) reaches only "[t]he cost of physically replicating or reproducing" material in the required format; it does not reach the per-gigabyte monthly rent and "Review DB Monthly Minimum" the City paid to store and review its data before deciding what to produce. *See Online DVD-Rental*, 779 F.3d at 927–31. Nor does the volume of Plaintiffs' document requests change the analysis. Volume may explain why the City chose to use a review platform, but storage rent is still not "making copies."

In addition, the City made its final production on September 24, 2025. (White Decl. ¶ 11.) DISCO nonetheless billed $9,486.88 in "Active" hosting for October 2025 through January 2026 (Dkt. 211 at 120–23), and another $4,500.00 after the data was moved to "Vault" storage in February 2026 (*id.* at 124–32). Those $13,986.88 in post-production charges cannot have been "necessarily obtained for use" in producing anything. And the City's own vendor records show that the City reused documents it had already collected and hosted for the Shenbaum Action, billing for time to "[c]oordinate next transfer of documents from Shenbaum to MBFA" and to "migrate" Shenbaum documents to the MBFA workspace. (Dkt. 211 at 137.) The City has already been awarded $73,533.59 in DISCO database fees in the *Shenbaum* Action. (White Decl. ¶ 7, Ex. 4, Shenbaum Action, Dkt. 221 at 20–21, 24.) The *Shenbaum* court allowed those fees because the City had collected 607,016 documents in response to four sets of requests demanding every form of electronically stored information. (*Id.* at 20–21.) That ruling does not control here. It does not bind this Court; it rested on the discovery record in that case, and it did not address storage rent billed after a party's final production. Having been awarded the cost of building and hosting the Shenbaum database once, the City cannot charge these Plaintiffs again for continuing to store documents it migrated from that database. The full $39,464.05 should be disallowed. At a minimum, the Clerk should disallow the $13,986.88 billed after the City's final production.



BROWN WHITE & OSBORN LLP ATTORNEYS

**2. FTI Consulting invoice already taxed in Shenbaum ($13,235.00)**

The City has already sought, and been awarded costs on, this exact invoice in the *Shenbaum* Action. FTI Invoice No. 100100114848, dated April 28, 2025, for $13,235.00, is attached to the City's Application here. (Dkt. 211 at 134–39.) The same invoice, with the same number, date, amount, and line-item entries, was attached to the City's cost application in the Shenbaum Action (White Decl. ¶ 4, Ex. 1, *Shenbaum* Action, Dkt. 199 at 124–28), where the City claimed it, together with a companion $645.00 invoice (No. 100100114847), as $13,880.00 in "[f]ees paid to e-discovery consultants for metadata analysis services" (*id.* at 80, 121–23). The Clerk taxed the full $13,880.00 in the *Shenbaum* Action, and the Court reduced that award to $6,940.00 on re-taxation, expressly reviewing the entries "between December 6, 2024 and February 12, 2025" on this invoice. (White Decl. ¶ 7, Ex. 4, *Shenbaum* Action, Dkt. 221 at 21–22, 24.) The City now asks for the same $13,235.00 a second time, ***without disclosing that it was already submitted in the Shenbaum Action and partly awarded there***.

In both cases, counsel for the City declared under 28 U.S.C. § 1924 that the claimed costs were "necessarily incurred in this action." (Dkt. 211 at 1; White Decl. ¶ 4, Ex. 1, Shenbaum Action, Dkt. 199 at 1.) The same invoice cannot have been necessarily incurred in both actions, and the City cannot recover the same expense twice. In the *Shenbaum* Action, the City told the Court that this invoice reflected "metadata analysis services necessary to rebut Plaintiffs' allegations of evidence spoliation" in that case, and that FTI "certified and exemplified the veracity of metadata." (White Decl. ¶ 4, Ex. 1, *Shenbaum* Action, Dkt. 199 at 80.)

Here, the City describes the same invoice as "replicating and reproducing numerous discovery documents" and collecting data for this case. (Dkt. 211 at 11.) The invoice itself describes neither; as shown below, it bills for review, privilege-log, and collection-planning work. The entire $13,235.00 should be disallowed for this reason alone.

Independently, the invoice is not taxable on its merits. It is captioned "RWG –

BROWN WHITE & OSBORN LLP ATTORNEYS

Shenbaum v City of Manhattan Beach" and covers charges posted through February 28, 2025. (Dkt. 211 at 134–36.) Its entries describe the very tasks the Shenbaum court held non-taxable. The $5,800.00 in "Document Database Services" covers reviewing Plaintiffs' document requests; preparing volume estimates "to assist in assessing City burden arguments"; calls about "discovery deadlines and upcoming meet and confer"; preparing "for and conduct[ing] training for MBFA review"; developing a "quick guide for MBFA review"; search "hit highlighting"; preparing "batches for review"; review status updates; migrating Shenbaum documents to the MBFA workspace; and generating and revising a privilege log. (*Id.* at 137–38.) The $4,235.00 in "Forensic Data Collection and Management" covers conferences with City IT staff about "collection planning," mapping a "collection truth table," inventorying data, and recommending custodian attribution. (*Id.* at 138.) The $3,200.00 "Chain of Custody/Custodian/Month" product is a tracking fee. (*Id.* at 139.)

None of this is "making copies" under § 1920(4) or reproduction under L.R. 54-3.10(g). Review, search, privilege logging, and collection planning are "prefatory steps in the discovery process" (L.R. 54-3.10) and "intellectual effort." *Online DVD-Rental*, 779 F.3d at 932. *See also Plantronics, Inc. v. Aliph, Inc.*, No. C 09-01714 WHA (LB), 2012 WL 6761576, at *10 (N.D. Cal. Oct. 23, 2012) ("intellectual effort" involved in the production of discovery, including "the research, analysis, and distillation of data," is not taxable). Every entry on this invoice is either intellectual work, collection planning, or a bundle of the two. The $13,235.00 should be disallowed on this ground as well.

Because neither the DISCO storage fees nor the FTI consulting invoice reflects the cost of making copies, the Clerk should disallow the entire $52,699.05 claimed under Tab 10(g).

## IV. THE COURT SHOULD DECLINE TO AWARD ANY COSTS

Independent of the item-by-item defects above, the Court should exercise its discretion to deny the City's request for costs in full. This is a significant civil rights case, and awarding the City's costs would risk chilling future claims by public

employees who speak out about public safety. Plaintiffs raise these grounds now to preserve them for the Court's review under Local Rule 54-2.5 and Rule 54(d)(1).

Rule 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators*, 231 F.3d at 591. That discretion is particularly appropriate in civil rights cases of public importance, because cost awards against losing plaintiffs "might have the regrettable effect of discouraging potential plaintiffs from bringing such cases at all." *Id.* at 593. In *Stanley v. University of Southern California*, 178 F.3d 1069 (9th Cir. 1999), the Ninth Circuit held that district courts "should consider the financial resources of the plaintiff and the amount of costs in civil rights cases," and that "the imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation" where the plaintiff raised important issues and "the answers were far from obvious." *Id.* at 1079–80; *see also Mansourian v. Bd. of Regents of Univ. of Cal. at Davis*, 566 F. Supp. 2d 1168, 1171–72 (E.D. Cal. 2008) (denying costs in light of plaintiffs' limited finances, the chilling effect on civil rights litigation, the good-faith pursuit of non-frivolous claims, and the complexity of the issues). Appropriate reasons include "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014). These factors are not exhaustive, and a losing party need not establish every one of them. See *Draper v. Rosario*, 836 F.3d 1072, 1087–88 (9th Cir. 2016); see also *Quan v. Comput. Scis. Corp.*, 623 F.3d 870, 888–89 (9th Cir. 2010) (proper grounds for denying costs also include "whether the losing party litigated in good faith"), *abrogated on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). In *Draper*, the Ninth Circuit held that the district court abused its discretion by awarding $3,018.35 in costs against a § 1983 plaintiff after a unanimous defense jury verdict. *Draper*, 836 F.3d at 1086–89.



BROWN WHITE & OSBORN LLP ATTORNEYS

**A. Public Importance**

Plaintiffs are 12 Manhattan Beach firefighters and their union who sued under 42 U.S.C. § 1983, alleging that City officials retaliated against them for speaking publicly about fire department staffing, mandatory overtime, and public safety, which is classic speech on matters of public concern. (Compl. ¶¶ 8, 37–38, 46, 81–82, Dkt. 1; *see also* Dkt. 197 at 28 (Instruction No. 43) ("I instruct you that at least some of Plaintiffs' speech was on a matter of public concern.").) That speech included a Vote of No Confidence in Department leadership over understaffing and mandatory overtime, public comment at City Council meetings, and a community campaign through social media, fliers, and canvassing about the Department's ability to provide emergency services to residents. (Compl. ¶¶ 37–38, 46, 81; Dkt. 197 at 28.) As the Complaint alleged, "[a] government's repeated and dangerous mismanagement of emergency services is always a topic of great concern to the public." (Compl. ¶ 8.) Thus, the public importance factor weighs in Plaintiffs' favor.

**B. Closeness of the Issues**

Unlike the *Shenbaum* Action, which ended on summary judgment, this case survived the City's motion to dismiss (Dkt. 23 at 7) and summary judgment as to the City (Dkt. 134 at 3 ("Defendants' Motion as to the City is denied in full.")), and it was tried to a jury over seven days. Surviving summary judgment is itself a sign that the issues were close. *See Draper*, 836 F.3d at 1088 (case was close where the plaintiff's evidence was sufficient to survive summary judgment).

The City cannot credibly call it "a labor dispute dressed up as a civil rights case," as it did in the *Shenbaum* Action (White Decl. ¶ 6, Ex. 3, *Shenbaum* Action, Dkt. 216 at 5), when it spent $52,081.25 on trial graphics and video to try the case to verdict. And a defense verdict on disputed facts does not foreclose the denial of costs: the Ninth Circuit affirmed the denial of costs to a defendant that prevailed at a jury trial in *Escriba*, 743 F.3d at 1247–49. Therefore, the closeness of the issues favors Plaintiffs.

**C. Chilling Effect**



BROWN WHITE & OSBORN LLP ATTORNEYS

A six-figure cost award against individual rank-and-file firefighters and their union, imposed by the municipal employer whose conduct they challenged, would deter public employees from bringing First Amendment claims concerning public-safety speech. *See Stanley*, 178 F.3d at 1080. If an award of $3,018.35 against a single plaintiff was an abuse of discretion in *Draper*, 836 F.3d at 1086–89, an award of more than $200,000 against 12 firefighters and their union would have a far greater chilling effect.

The City's anticipated response, that denying costs here would mean that no civil rights plaintiff suing a public entity must ever pay costs (*see* White Decl. ¶ 6, Ex. 3, Shenbaum Action, Dkt. 216 at 5–6), misstates the inquiry. Plaintiffs do not seek a categorical rule. They ask the Court to weigh the *Escriba* factors on this record: a First Amendment case about public-safety speech, tried to verdict, in which a municipality seeks more than $200,000 from individual firefighters and their union. Nor does the *Shenbaum* court's refusal to deny costs there carry over. That court found that the Shenbaum claims had no ramifications beyond the parties and turned on disputed facts. (White Decl. ¶ 7, Ex. 4, Shenbaum Action, Dkt. 221 at 11–12.) Here, the Court instructed the jury that Plaintiffs' speech addressed a matter of public concern (Dkt. 197 at 28), denied the City's motion for summary judgment "in full" (Dkt. 134 at 3), and sent to a jury a claim that the City Council itself retaliated against an entire department for speaking out about public safety.

**D. Good Faith**

Plaintiffs also litigated this case in good faith, which is itself a proper ground for denying costs. *See Quan*, 623 F.3d at 888–89; *Ass'n of Mexican-Am. Educators*, 231 F.3d at 592 n.15. "[A]t no time during this litigation, did [P]laintiffs press frivolous claims or arguments." *Mansourian*, 566 F. Supp. 2d at 1172. Their claims survived the City's motion to dismiss and its motion for summary judgment, and the jury resolved disputed facts after a seven-day trial. (Dkt. 23 at 7; Dkt. 134 at 3.) Accordingly, this factor also weighs against an award of costs.

**E.** Financial Resources and Economic Disparity

The City seeks $206,892.46, or roughly $15,900 per plaintiff if divided equally among the 13 plaintiffs, and far more from any plaintiff held jointly liable. Plaintiffs are individual City public-safety employees, and the Association represents them and relies on members' dues. The Association has already borne extraordinary costs: to fund its response to the City's conduct, it had to raise member dues from $35 to $100, then to $150, and ultimately to $200. (Decl. of James Falls ¶ 118, Dkt. 89.) Meanwhile, the City is a municipal corporation that can spread the cost of litigation across its budget. A share of $15,000 or more is a substantial sum for an individual firefighter to pay to the employer whose conduct he challenged. That economic disparity is an appropriate ground for declining to award costs. *Ass'n of Mexican-Am. Educators*, 231 F.3d at 592–93; *Escriba*, 743 F.3d at 1249 (district court properly considered the economic disparity between the parties).

Each of these factors weighs against an award of costs. Plaintiffs therefore ask the Court to exercise its discretion to deny the City's request for costs in its entirety or, at a minimum, substantially reduce any award and divide it as set out below.

**F. Alternatively, Any Award Should Be Divided Among Plaintiffs**

If the Court awards any costs, it should divide them among Plaintiffs rather than impose them jointly and severally, which would also reduce the risk of duplicative costs. *Eaglesmith v. Ray*, No. 2:11-cv-00098 JAM-AC, 2013 U.S. Dist. LEXIS 42824, at *7 (E.D. Cal. Mar. 25, 2013) (dividing costs equally among four civil rights plaintiffs) (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 764 (8th Cir. 2006) (affirming equitable division of costs among 13 plaintiffs)).

The size of the City's bill makes dividing the costs especially appropriate. Joint and several liability would expose each individual firefighter to the entire $206,892.46 the City spent defending claims brought by 13 plaintiffs, a result that would compound the chilling effect described above. Many of the claimed costs are also specific to individual plaintiffs. (*See*, e.g., Appendix A (separate deposition invoice for each individual Plaintiff).) Plaintiffs therefore request that any award be divided equally

BROWN WHITE & OSBORN LLP ATTORNEYS

among the 13 Plaintiffs.

## V. CONCLUSION

The City's Application seeks to shift to 12 firefighters and their union the cost of the City's own litigation choices (video, rush transcripts, database storage, and a trial-graphics team) that the Local Rules do not permit the Clerk to tax. For the foregoing reasons, Plaintiffs respectfully request that the Clerk disallow the objectionable items. On review under Local Rule 54-2.5 and Rule 54(d)(1), Plaintiffs will ask the Court to exercise its discretion to deny the City's request for costs in its entirety or, in the alternative, to substantially reduce the amount awarded or to divide any award equally among the 13 Plaintiffs.

Dated: November 25, 2026

Respectfully submitted,
BROWN WHITE & OSBORN LLP

By ______________________________
THOMAS M. BROWN
KENNETH P. WHITE
KARINEH DARBINIAN
Attorneys for Plaintiffs
MANHATTAN BEACH FIREFIGHTERS' ASSOCIATION, et al

BROWN WHITE & OSBORN LLP
ATTORNEYS

## APPENDIX A: ITEMIZED OBJECTIONS TO TAB 5 (DEPOSITIONS)

| Dkt. 211 Page | Deposition / Item | Invoice Total | Objected | Grounds (§ III.B) |
|---|---|---|---|---|
| 33 | Brian Fujimoto (Steno, 5/13/25) | $3,928.65 | $2,093.25 | Video/sync $1,769.25; Litigation pkg. $299.00; Media/cloud $25.00 |
| 34 | Esquire – audio transcript, City Council mtg. 9/20/22 | $891.75 | $891.75 | Not a deposition $891.75 |
| 35 | Erick Strong (Steno, 7/15/25) | $3,515.30 | $1,835.25 | Video/sync $1,511.25; Litigation pkg. $299.00; Media/cloud $25.00 |
| 36 | Patrick Jacobson (Steno, 6/26/25) | $4,153.95 | $2,483.25 | Rough draft $407.50; Video/sync $1,751.75; Litigation pkg. $299.00; Media/cloud $25.00 |
| 37 | Lisa Jenkins (Veritext copy, 7/17/25) | $1,818.15 | $795.70 | Rough draft $455.70; Logistics fee $230.00; Smart Summary $110.00 |
| 38 | Steven Fairbrother (Steno, 8/1/25) | $3,843.10 | $1,920.75 | Video/sync $1,746.75; Litigation pkg. $149.00; Media/cloud $25.00 |
| 39 | Thomas Desmond (Steno, 7/24/25) | $4,886.45 | $2,569.75 | Video/sync $2,145.75; Litigation pkg. $149.00; Media/cloud $25.00; Touchscreen rental $250.00 |
| 40 | Esquire – audio transcript, City Council mtg. 7/25/25 | $297.75 | $297.75 | Not a deposition $297.75 |
| 41 | James Falls (Steno, 8/12/25) | $5,544.55 | $2,625.50 | Video/sync $2,251.50; Litigation pkg. $149.00; Media/cloud $25.00; Expedite/rush $200.00 |
| 42 | Chris Grafton (Steno, 7/28/25) | $3,750.65 | $1,740.50 | Video/sync $1,566.50; Litigation pkg. $149.00; Media/cloud $25.00 |
| 43 | Bruce Moe (Veritext copy, 8/13/25) | $1,820.30 | $285.00 | Logistics fee $175.00; Smart Summary $110.00 |
| 44 | Rudy Mejia vol. 2 – late cancellation (Steno) | $650.00 | $650.00 | Cancellation $650.00 |
| 45 | Jeffrey Rice (Steno, 8/20/25) | $4,219.45 | $2,088.75 | Video/sync $1,764.75; Litigation pkg. $299.00; Media/cloud $25.00 |
| 46 | Peter Brown (Veritext copy, 9/12/25) | $2,090.75 | $890.20 | Rough draft $550.20; Logistics fee $230.00; Smart Summary $110.00 |
| 47 | Rudy Mejia (Steno, 8/28/25) | $4,007.95 | $2,145.50 | Video/sync $1,821.50; Litigation pkg. $299.00; Media/cloud $25.00 |

Brown White & Osborn LLP
Attorneys

| Dkt. 211 Page | Deposition / Item | Invoice Total | Objected | Grounds (§ III.B) |
|---|---|---|---|---|
| 48 | James Stratton (Steno, 8/25/25) | $4,058.15 | $2,133.00 | Video/sync $1,809.00; Litigation pkg. $299.00; Media/cloud $25.00 |
| 49 | Christian McArthur (Steno, 8/27/25) | $3,943.20 | $2,006.50 | Video/sync $1,682.50; Litigation pkg. $299.00; Media/cloud $25.00 |
| 50 | Christine Tomikawa (Veritext copy, 10/6/25) | $625.00 | $230.00 | Logistics fee $175.00; Smart Summary $55.00 |
| 51 | Scott Halfdell (Veritext copy, 10/7/25) | $711.40 | $285.00 | Logistics fee $230.00; Smart Summary $55.00 |
| 52 | Lisa Jenkins PMQ (Veritext copy, 10/9/25) | $1,480.75 | $340.00 | Logistics fee $230.00; Smart Summary $110.00 |
| 53 | Auvi Tonnu (Veritext copy, 9/4/25) | $918.35 | $285.00 | Logistics fee $175.00; Smart Summary $110.00 |
| 54 | Stephanie Swofford (Veritext copy, 10/15/25) | $1,859.30 | $852.40 | Rough draft $512.40; Logistics fee $230.00; Smart Summary $110.00 |
| 55 | James Falls – PMK (Steno, 9/25/25) | $3,787.35 | $1,856.50 | Video/sync $1,682.50; Litigation pkg. $149.00; Media/cloud $25.00 |
| 56 | Timothy O'Brien (Steno(Steno, 10/16/25) | $3,983.31 | $2,385.26 | Rough draft $282.50; Expedite/rush $755.76; Video/sync $1,173.00; Litigation pkg. $149.00; Media/cloud $25.00 |
| 57 | Michael Lang (Veritext copy, 9/16/25) | $2,151.90 | $942.70 | Rough draft $602.70; Logistics fee $230.00; Smart Summary $110.00 |
| 58 | Mike Boyd (Veritext copy, 9/11/25) | $1,720.00 | $340.00 | Logistics fee $230.00; Smart Summary $110.00 |
| 59 | David Shenbaum (Steno, 10/17/25) | $4,306.10 | $2,266.50 | Rough draft $402.50; Video/sync $1,690.00; Litigation pkg. $149.00; Media/cloud $25.00 |
| 60 | Peter Heck (Steno, 9/2/25) | $4,184.25 | $2,172.75 | Video/sync $1,998.75; Litigation pkg. $149.00; Media/cloud $25.00 |
| 61 | Anthony Gomes 30(b)(6) (Veritext copy, 10/21/25) | $1,068.00 | $340.00 | Logistics fee $230.00; Smart Summary $110.00 |
| 62 | Jessica Vincent (Veritext copy, 9/22/25) | $985.30 | $340.00 | Logistics fee $230.00; Smart Summary $110.00 |
| 63 | Libby Bretthauer (Veritext copy, 10/20/25) | $1,085.55 | $340.00 | Logistics fee $230.00; Smart Summary $110.00 |



BROWN WHITE & OSBORN LLP ATTORNEYS

| Dkt. 211 Page | Deposition / Item | Invoice Total | Objected | Grounds (§ III.B) |
|---|---|---|---|---|
| 64 | Joseph Castro (Steno, 11/17/25) | $5,657.91 | $3,440.56 | Rough draft $400.00; Expedite/rush $1,050.56; Expert/medical surcharge $98.00; Video/sync $1,568.00; Litigation pkg. $299.00; Media/cloud $25.00 |
| 65 | Freeman & Mills – M. Ferrante expert deposition time | $700.00 | $700.00 | Expert fee $700.00 |
| 66 | Matthew Ferrante (Steno, 11/18/25) | $2,006.75 | $1,236.75 | Rough draft $160.00; Expert/medical surcharge $39.50; Video/sync $713.25; Litigation pkg. $299.00; Media/cloud $25.00 |
| 67 | Rudy Mejia – PMK (Steno, 10/14/25) | $4,057.94 | $2,365.34 | Expedite/rush $771.84; Video/sync $1,419.50; Litigation pkg. $149.00; Media/cloud $25.00 |
| 68 | Joseph Castro – expert deposition fee | $1,500.00 | $1,500.00 | Expert fee $1,500.00 |
| 69 | Victoria Wilkerson (Veritext copy, 12/17/25) | $696.90 | $285.00 | Logistics fee $230.00; Smart Summary $55.00 |
| 70 | Peter Brown – video MPEG/digitizing (Veritext) | $510.00 | $510.00 | Video/sync $510.00 |
| 71 | Parking – Michael Boyd deposition | $46.00 | $46.00 | Parking $46.00 |
| 73 | Timothy O'Brien – video videographer (Legal Video Solutions) | $667.50 | $667.50 | Video/sync $667.50 |
| | **TOTAL (TAB 5)** | **$98,129.66** | **$51,179.66** | **Not objected: $46,950.00** |

BROWN WHITE & OSBORN LLP
ATTORNEYS